Herbert BEARD, # 21791–149, Plaintiff,

v.

Governor David BOREN, of the State of Oklahoma, et al., Defendants.

No. 75–0843–D.

United States District Court,
W. D. Oklahoma,
Civil Division.

Jan. 7, 1976.

Herbert Beard, pro se.

Larry Derryberry, Atty. Gen., Oklahoma City, Okl., for defendants.

## ORDER

DAUGHERTY, Chief Judge.

This is a Civil Rights action brought by a prisoner confined in the Federal Reformatory at El Reno, Oklahoma, seeking money damages together with declaratory and injunctive relief. The plaintiff contends that the defendants have violated 42 U.S.C. § 1983 and he asserts jurisdiction under 28 U.S.C. § 1343. The defendants have filed a Motion to Dismiss on the grounds that the court lacks subject matter jurisdiction, the complaint fails to state a claim against the defendants, the plaintiff's proper remedy is habeas corpus, the claim against the defendants is barred by the sovereign immunity of the State of Oklahoma and further that the action is now moot.

The plaintiff alleges he was paroled by the State of Oklahoma on December 7, 1972. While he was in parole status he was arrested on or about July 31, 1974, on federal charges. Thereafter, he was convicted of the federal crime and committed to the

Texarkana F.C.I. at Texarkana, Texas. Apparently as a result of this conviction the State of Oklahoma issued a revocation warrant in March 1975 and lodged a detainer with the federal prison authorities. In April 1975 the plaintiff was accorded a preliminary parole revocation hearing by the State of Oklahoma at the federal institution. At the conclusion of this hearing it was determined that probable cause existed to revoke the plaintiff's Oklahoma parole. He states that on or about July 1, 1975, he made a request for speedy final revocation hearing. It further appears that the plaintiff was subsequently transferred to the Federal Reformatory at El Reno, Oklahoma, and on October 27, 1975, a final revocation hearing was conducted by Oklahoma officers at the Federal Reformatory, El Reno, Oklahoma, resulting in the revocation of the plaintiff's parole. The plaintiff does not contend that in this final hearing he was not afforded all of his constitutional rights including the opportunity to present evidence in his behalf on the charge or to show that there were substantial reasons in justification or mitigation that made revocation inappropriate.

 It is fundamental that in order for a defendant to be liable under 42 U.S.C. § 1983 it is essential that he must have acted under color of State law to cause the denial of a federally protected right. *Espinozo v. Rogers*, 470 F.2d 1174 (CA10 1972). Here there was no denial of a federally protected right. The plaintiff claims that he was denied due process because his preliminary and final revocation hearings were not timely held. He mistakenly assumes that the issuance of the parole violator's warrant issued by the State of Oklahoma in March, 1975, triggered the due process time limits for the revocation hearing set forth in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). A parallel situation involving a federal parolee has been considered by the Court of Appeals for the Tenth Circuit in *Small v. Britton*, 500 F.2d 299 (CA10 1974). He had been paroled from a federal sentence in September, 1968. He was convicted in May, 1970, in Colorado on a State charge and the United States

Board of Parole on October 14, 1970, lodged a revocation warrant as a detainer against him with the Colorado State Penitentiary authorities. On January 23, 1973, he was paroled by Colorado to the federal detainer. On March 19, 1973, at the United States Penitentiary a parole revocation hearing was conducted and on March 28, 1973, the Board of Parole revoked his parole because of the intervening State conviction. On his appeal the parolee contended that the delay by the Board of Parole in affording him a revocation hearing until after completion of the service of the intervening State sentence constituted a violation of his right to due process under the Fifth Amendment entitling him to immediate release. The court disagreed and held that it was the "execution" of the revocation warrant rather than the "issuance" which invokes the due process time requirements for the revocation hearings. It summarized its ruling as follows:

> "In summary, we conclude: (1) the *Morrissey* decision requires that a revocation hearing be held within a reasonable time after the parolee is taken into custody; (2) a parolee is not 'taken into custody' until the revocation warrant has been executed; (3) *Morrissey* does not require that a revocation warrant be executed immediately after it has been issued; and (4) incarceration in a state institution is a good reason for delay in the execution of a warrant." 500 F.2d at 302.

Applying these principles to the plaintiff herein, it appears that in fact, the parole violator's warrant has never been executed. In conducting the parole revocation hearings the State never took the plaintiff into custody but a representative traveled to the federal institutions for the purpose of conducting the hearings. The State was not required to execute its revocation warrant immediately after it was issued in March, 1975. The confinement of plaintiff in a federal penitentiary constituted a good reason for delay in the execution of the warrant. The State if it had so desired could have delayed the revocation hearing until after completion of the service of the inter-

vening federal sentence. Further, the plaintiff alleges no facts which would indicate that an earlier execution of the warrant and earlier revocation hearings would have been advantageous to him.

▆▆ Moreover, the plaintiff alleges no facts personally involving any of the defendants in the claimed denial of a constitutional rights. He apparently assumes that on some theory of respondeat superior these defendants would be responsible for all events in connection with the revocation of his parole. It is well established that the doctrine of respondeat superior is not applicable to cases brought pursuant to 42 U.S.C. § 1983. *Barrows v. Faulkner,* 327 F.Supp. 1190 (W.D.Okl.1971). Specifically, it has been pointed out:

> "It is, of course, quite settled that while the Governor of a State may be a whipping boy in the press, or even with the electorate for things done or omitted by his appointees of which he had no personal knowledge, that does not hold true in a court of law.

> "Unless the Governor himself did some specific act that was wrong there is no personal liability for State acts on the theory of respondeat superior for which relief can be had under 42 U.S.C. § 1983." *Harty v. Rockefeller,* 338 F.Supp. 367, 368 (S.D.N.Y.1972).

It is a general rule that an official will not be held liable in a Civil Rights action unless he directly and personally participates in conduct under color of state law which deprives the plaintiff of rights, privileges and immunities secured him by the federal Constitution. *Richardson v. Snow,* 340 F.Supp. 1261 (D.Md.1972). It is an essential element of a Civil Rights claim that a particular defendant be personally involved in the alleged denial of the constitutional right. *Battle v. Lawson,* 352 F.Supp. 156 (W.D. Okl.1972); *Townes v. Swenson,* 349 F.Supp. 1246 (W.D.Okl.1972). In *Campbell v. Anderson,* 335 F.Supp. 483 (D.Del.1971), the "Director of the Division of Adult Correction", a position evidently somewhat comparable to that of the defendant Benton here, and the "Secretary of the Department of Health and Social Services" were dismissed as defendants as the court noted the Civil Rights Statute contemplates only the liability of persons who have personally directed or participated in the deprivation of federal rights. In this case, plaintiff's complaint is completely devoid of any accusation that the defendants Boren and Benton were involved in the matters upon which this cause of action is based and the mere fact that defendant Bare was the plaintiff's parole officer is hardly sufficient to make him personally liable for the subsequent events.

For the reasons stated the Motion to Dismiss will be sustained.

ACCORDINGLY, IT IS ORDERED:

1. The Motion to Dismiss of the defendants is sustained.

2. The cause is hereby dismissed.